## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LATOYA R. JORDAN,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil Action No. MJM-24-1128** |
| | * | |
| **LONZA WALKERSVILLE, INC.,** | * | |
| | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

Plaintiff Latoya R. Jordan ("Plaintiff") filed this civil action against defendant Lonza Walkersville, Inc. ("Defendant") for alleged violations of Title VII of the Civil Rights Act of 1964. ECF No. 1. Specifically, the Complaint asserts claims for employment discrimination on the basis of race in Count One, hostile work environment in Count Two, and employment discrimination on the basis of engaging in protected activity (or retaliation) in Count Three. *Id.* Defendant filed a motion to dismiss the Complaint in its entirety. ECF No. 5. Plaintiff filed a response in opposition to the motion, ECF No. 8, and Defendant filed a reply in support of the motion, ECF No. 9. The Court has reviewed the filings and finds that no hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendants' motion will be granted, and the Complaint shall be dismissed without prejudice.

## I.     FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Complaint (ECF No. 1).

Plaintiff was hired by Defendant on July 18, 2018, as a Media Department Manufacturing Associate I, and she worked in that position until her resignation. ECF No. 1, ¶¶ 8, 25. During her employment, Plaintiff consistently received above average performance ratings. *Id.* ¶ 9.

In or around June 2018, Plaintiff, African American, alleges that she experienced racially motivated workplace harassment from her supervisor, Carlos Henriquez, who is Salvadorian. *Id.* ¶ 10. She alleges that Mr. Henriquez spoke down to Plaintiff in front of her teammates by calling her stupid *Id.* Plaintiff reported Mr. Henriquez's actions to another supervisor, saying that Mr. Henriquez's behavior towards her made her feel disrespected and that she believed he was singling her out because of her race. *Id.* ¶¶ 11, 12. No action was taken to address Mr. Henriquez's behavior and he subsequently refused to train Plaintiff, which affected her ability to improve her skills to obtain a promotion. *Id.* ¶¶ 13, 14.

On or around August 2019, Plaintiff filed a report against Mr. Henriquez in the human resources department ("HR"), alleging race discrimination, HR took no action and the behavior persisted. *Id.* ¶¶ 15, 16. Shortly after Plaintiff submitted her report to HR, another employee who is also Mr. Henriquez's mother-in-law, came up to Plaintiff's workstation and stated, "People are lying around here," and looked at Plaintiff. *Id.* ¶ 17. On or around October 1, 2018, another employee screamed at Plaintiff. *Id.* ¶ 18. When Plaintiff reported this incident to a supervisor, the supervisor threatened Plaintiff with a write-up. *Id.* Plaintiff made another report of race discrimination to HR, who again failed to act and the negative behavior persisted. *Id.*

In March 2021, an employee informed Plaintiff that the management team, consisting of three Caucasian individuals, had released her HR discrimination reports to the entire staff. *Id.* ¶ 19. Plaintiff alleges that "none of her similarly situated colleagues of a different protected class had their HR reports released to the staff." *Id.* The same month, a Puerto Rican employee informed Plaintiff that to be promoted she would need to stop making racial discrimination complaints. *Id.* ¶ 20. He also stated that the treatment she was enduring was "solely because she was African American" and that he overheard conversations where the management team spoke negatively

about Plaintiff and her race. *Id.* On March 8, 2021, Plaintiff was switched from the third to the second shift, and her new supervisor, a Caucasian male, told her that she would not be promoted due to her "history." *Id.* ¶¶ 21, 22.

On or around June 2, 2021, Plaintiff attended a meeting organized by Mr. Henriquez where he received an update from all team members except Plaintiff. *Id.* ¶ 23. When it was Plaintiff's turn, Mr. Henriquez ended the meeting. *Id.* Plaintiff sent an email to her supervisor expressing that she was being disrespected and felt like an outcast, but received no response. *Id.* That same day, Plaintiff filed a report detailing the discrimination and harassment she had been experiencing to the Lonza Ethical Convergent/Hotline, a platform for employees' legal and ethical complaints. *Id.* ¶ 24. In her report, she identified all her previous reports and noted that she still had not received a promotion. *Id.* Plaintiff never received a response from any member of the HR department concerning the report. *Id.*

Plaintiff resigned from her position on or around September 29, 2021. *Id.* ¶ 25.

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to

the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

## III.    ANALYSIS

Defendant moves to dismiss the Complaint in its entirety as untimely and for failure to state a plausible claim for relief. ECF No. 5. Specifically, Defendant argues that all of Plaintiff's claims fall outside the applicable 300-day limitations period and, even if the claims were not time-barred, Plaintiff's allegations fail to set forth any actionable adverse action or hostile work environment. *Id.* In opposition to Defendant's motion, Plaintiff argues that she has asserted claims for continuing violations of Title VII based upon constructive discharge and hostile work environment that are not time-barred, and she has alleged sufficient facts to support these claims. ECF No. 8. In reply, Defendant argues that Plaintiff's allegations are inadequate to support a plausible constructive discharge, hostile work environment, or retaliation claim that is not time-barred. ECF No. 9.

### A. Timeliness

Before asserting a Title VII claim in federal court, a plaintiff must exhaust their administrative remedies. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019). In Maryland, to satisfy this requirement, a plaintiff must file a charge of discrimination with the EEOC or an appropriate state or local agency within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008). Thus, for Title VII claims based upon discrete acts of discrimination for retaliation, the Supreme Court has stated that a complainant "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 110 (2002). The Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

However, unlike claims for discrete acts of discrimination, claims of hostile work environment occur "over a series of days or perhaps years," and "a single act of harassment may not be actionable on its own." *Id.* at 115. Accordingly, "the continuing violation doctrine applies to a hostile work environment claim." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (citing *Morgan*, 536 U.S. at 116–17, and *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 223 n.5 (4th Cir. 2016)). If "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability[.]" *Id.* at 117. "[T]he employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118. "[E]ven if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period." *Guessous*, 828 F.3d at 222.

Plaintiff filed her EEOC charge on May 22, 2022. ECF No. 1, ¶ 5. Therefore, the only claims premised on discrete acts of discrimination that are timely are those for acts occurring on or after July 26, 2021—300 days prior to May 22, 2022. Here, all of the discrete acts of discrimination Plaintiff alleges in the Complaint occurred before this 300-day period.

The only relevant event that occurred during this period was Plaintiff's resignation on September 29, 2021. ECF No. 1, ¶ 25. Plaintiff alleges that she suffered "a persistent pattern of severe and pervasive harassment" that constituted a discriminatory and retaliatory hostile work environment and culminated in her resignation. *Id.* ¶ 41. To the extent these claims are for

continuing violations of Title VII that continued into the 300-day limitations period, they are not untimely and will be assessed on the merits of Plaintiff's allegations. However, any discrimination and retaliation claims based on discrete acts occurring before July 26, 2021, must be dismissed as untimely.

### B. Title VII Discrimination and Retaliation

Title VII makes it unlawful for an employer to discriminate against an individual with respect to employment based upon the individual's race, or to retaliate against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1) (Title VII anti-discrimination provision); 42 U.S.C. § 2000e–3(a) (Title VII anti-retaliation provision).

To state a plausible claim of discrimination under Title VII, Plaintiff must allege an action by her employer that "adversely affect[ed] the terms, conditions, or benefits of [her] employment." *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 2000e–2(a)(1). The U.S. Supreme Court and Fourth Circuit Court of Appeals have repeatedly cautioned that Title VII must not be construed to impose "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). A Title VII claim for discrimination requires "some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Sunbelt Rentals*, 521 F.3d 306, 315 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)); *see also Booth v. County Exec.*, 186 F. Supp. 3d

479, 485 (D. Md. 2016) (plaintiff's claims that his supervisor "humiliated him in two meetings, made jokes about him, and isolated him from other employees, while alleging mean-spirited behavior, do not assert an adverse employment action"); *Blount v. Dep't of Health and Human Services*, 400 F. Supp. 2d 838, 842 (D. Md. 2004) ("[D]isparaging remarks made by a supervisor do not state an adverse employment action.").

Similarly, a Title VII claim for retaliation requires "materially adverse action" by an employer. *Perkins*, 936 F.3d at 213. Importantly, however, the requirement of a "materially adverse action" necessary to sustain a claim of retaliation under Title VII "is different from an adverse employment action required for a disparate treatment claim." *Id.* A claim of retaliation under Title VII requires an action by the employer that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). "[W]hile factors other than the terms and conditions of employment may be examined" to determine whether a materially adverse action has occurred for purposes of a Title VII retaliation claim, "this is still a heavy burden for the plaintiff: the alleged adverse action must be *material.*" *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (citing *White*, 548 U.S. at 63–67).

### 1. Failure to Promote

A failure to promote may constitute an adverse employment action for purposes of a Title VII discrimination or retaliation claim. *See Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 544 (4th Cir. 2003) ("It has long been clear that failure to promote an employee constitutes an adverse employment action for the purposes of § 2000e–3.") (citation omitted). "In order to properly plead a failure-to-promote claim under Title VII . . . ," a plaintiff must identify "a specific position for which she applied" and her employer's rejection of her application "'under

circumstances that give rise to an inference' of liability." *Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022) (quoting *Williams*, 370 F.3d at 430).

Although Plaintiff generally alleges that Defendant failed to promote her, any failure-to-promote claim she intends to assert in the Complaint fails because she does not allege that she applied for, and was denied, any specific promotion within the 300 days of filing her EEOC charge. *See* Part III.A supra (citing *Morgan*, 536 U.S. at 110, and *Williams*, 370 F.3d at 428). Importantly, an employer's failure to promote based on race "is a discrete act of discrimination," so "the continuing violation doctrine does not apply . . . and cannot save . . . untimely claims." *Williams*, 370 F.3d at 429. Accordingly, any failure-to-promote claim Plaintiff intends to assert is subject to dismissal for insufficient pleading.

### 2. Hostile Work Environment

Title VII discrimination and retaliation claims may also be premised upon a hostile work environment. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 210–19 (4th Cir. 2022) (recognizing claims for both discriminatory and retaliatory hostile work environment under Title VII). "A hostile work environment claim is available to Title VII plaintiffs who have not experienced a tangible employment action . . . ." *Id.* at 216. A hostile work environment exists "[w]hen 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (quoting *Boyer-Liberto*, 786 F.3d at 277).

The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993); *Perkins*, 936 F.3d at 207–08; *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 331 (4th Cir. 2018). "Whether the environment is objectively

hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. "[W]hen determining whether the harassing conduct was objectively severe or pervasive," a court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (cleaned up). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). And "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted).

Plaintiff's hostile work environment claims fail, for two reasons. First, Plaintiff does not allege any discriminatory or retaliatory harassment that continued beyond July 26, 2021, into the 300-day period that proceeded the filing of her Complaint. A hostile work environment claim premised entirely upon conduct that occurred before July 26, 2021, is untimely. *See Agolli v. Off. Depot, Inc.*, 548 F. App'x 871, 875 (4th Cir. 2013) (affirming Rule 12(b)(6) dismissal of hostile work environment claim as time-barred where "each act of harassment alleged in the Complaint took place more than 300 days before she filed her EEOC charge").

10

Second, even if Plaintiff's hostile work environment claim was not time-barred, she does not allege any conduct that was so objectively severe or pervasive as to alter the conditions of her employment. Over her three-year term of employment with Defendant, Plaintiff alleges that: her supervisor once called her stupid, ECF No. 1, ¶ 10; the supervisor refused to train her, *id.* ¶ 14; two complaints of discrimination were ignored, *id.* ¶¶ 12–16; after reporting discrimination to HR, another employee came to her workstation and said, "People are lying around here," while looking at Plaintiff, *id.* ¶ 17; a coworker once screamed at her, and after reporting the coworker, Plaintiff was threatened with a write-up, *id.* ¶ 18; Plaintiff was told that her discrimination reports had been released to the staff, *id.* ¶ 19; she was told that, to get promoted, she had to stop making reports alleging racial discrimination and that her "history" precluded her from a promotion, *id.* ¶¶ 20–22; Plaintiff's shift was changed, *id.* ¶¶ 21–22; she was once prevented from speaking in a team meeting, *id.* ¶ 23; and that same day, she made a report to the legal and ethics hotline but never received a response, *id.* ¶ 24. The foregoing alleged incidents were not so hostile, abusive, or frequent, over Plaintiff's three-year period of employment, as to alter the conditions of her employment. The incidents consist largely of isolated instances of interpersonal conflict, rude treatment, and offhand comments that are not actionable under Title VII.

Accordingly, Plaintiff's hostile work environment claims must be dismissed.

### 3. Constructive Discharge

A constructive discharge may also sustain a claim of discrimination or retaliation under Title VII. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004) ("Title VII encompasses employer liability for a constructive discharge."); *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (discriminatory constructive discharge); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (retaliatory constructive discharge). A Title VII claim

based upon a constructive discharge "contemplates a situation in which an employer discriminates against an employee to the point such that h[er] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Suders*, 542 U.S. at 141).

Importantly, a constructive discharge claim requires "'something more' than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Suders*, 542 U.S. at 147). "To establish a constructive discharge claim, a plaintiff must show 'that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." *Id.* (quoting *Green*, 578 U.S. 547, 555) (alterations in *Evans*). The work conditions must go "beyond 'ordinary' discrimination." *Evans*, 936 F.3d at 193 (quoting *Suders*, 542 U.S. at 147). As to the intolerability of the work environment, the Fourth Circuit explained:

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign, . . . that is, whether [s]he would have had no choice but to resign.

*Perkins*, 936 F. 3d at 212 (internal quotation marks and citations omitted). Intolerability is a high bar. "[D]ifficult or unpleasant working conditions . . . , without more, are not so intolerable as to compel a reasonable person to resign." *Id.* Allegations such as yelling by supervisors, receiving poor evaluations, being chastised in front of customers, "even if true, do not establish the objectively intolerable working conditions necessary to prove a constructive discharge." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Further, "[t]he 'frequency of the conditions at issue' is an important part of the intolerability assessment." *EEOC v. Greyhound Lines, Inc.*,

554 F. Supp. 3d 739, 753 (D. Md. 2021) (quoting *Evans*, 936 F.3d at 193). "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Evans*, 936 F.3d at 193.

Here, Plaintiff fails to state any Title VII claim for constructive discharge. As explained in Part III.B.2 *supra*, Plaintiff's alleged mistreatment while employed by Defendant falls short of presenting a plausible claim for hostile work environment. Naturally, then, the same allegations cannot support a plausible constructive discharge claim. *See Evans*, 936 F.3d at 193 (quoting *Suders*, 542 U.S. at 147) (requiring plaintiff alleging constructive discharge to "show 'something more' than the showing required for a hostile work environment claim"). Plaintiff alleges that, over the three-year course of her employment with Defendant, she suffered a series of isolated instances of interpersonal conflict, rude treatment, and offhand comments. The incidents were not so frequent or severe to rise to the level of objective intolerability or to compel a reasonable employee to resign. Indeed, Plaintiff did not resign until September 29, 2021, approximately three months after the last alleged instance of mistreatment.

Plaintiff cites *Lloyd v. Riveredge Operating Co., LLC*, Civ. No. GLR-20-3162, 2021 WL 2550495, at *5 (D. Md. June 21, 2021), but the instant case is nothing like *Lloyd*. In *Lloyd*, the Court found that there was a plausible constructive discharge claim where the plaintiff alleged that she was:

> repeatedly pressured [ ] to quit because she reported sexual harassment; (2) after she reported the harassment, forced her to work alone in a barn, [was] yell[ed] at and threaten[ed] [ ] whenever she left the barn; (3) on an almost daily basis, belittled, berated, and screamed [ ]in front of coworkers and clients; (4) [subjected to] degrading, sex-based remarks [ ], despite her requests to discontinue the behavior; and (5) [her] coworkers [were instructed] to find negative information about her and to monitor her actions in an

13

> effort to manufacture a pretext to terminate her. [The plaintiff] was
> subjected to this treatment constantly for a period of approximately
> five months. Moreover, when she could no longer take the abuse and
> sought to report it, [the defendant] told her that the only individual
> to whom she could report the abuse was her primary abuser. . . . This
> mistreatment caused [her] to experience physical symptoms,
> including anxiety and sleeplessness.

Civ. No. GLR-20-3162, 2021 WL 2550495, at *5 (D. Md. June 21, 2021). No comparable conduct

is alleged to have occurred in this case.

Accordingly, Plaintiff's Title VII constructive discharge claims must be dismissed.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion will be GRANTED. The Complaint will

be dismissed without prejudice.

A separate Order will issue.


_____3/31/25_____                                   _____
Date                                                Matthew J. Maddox
                                                    United States District Judge

14